# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**AZIZALLY S. VIRANI and  ALINA A. VIRANI,**

                           **Plaintiffs,**

**-vs-**                                            **Case No.  6:09-cv-511-Orl-22DAB**

**HOMEFIELD FINANCIAL, INC.;**
**SELECT PORTFOLIO SERVICING, INC.;**
**MORTGAGE ELECTRONIC**
**REGISTRATION SYSTEM, INC.; U.S.**
**BANK NATIONAL ASSOCIATION,**

                           **Defendants.**
_____

## ORDER

## I. INTRODUCTION

      This cause comes before the Court for consideration of Defendant Mortgage Electronic Registration System, Inc.'s ("MERS") Motion to Dismiss (Doc. No. 13), filed on July 13, 2009. The Court will also consider Defendants Select Portfolio Servicing, Inc.'s ("SPS") and U.S. Bank National Association's ("USBNA") Motion to Dismiss (Doc. No. 22), filed on July 28, 2009.  Plaintiffs Azizally S. Virani and Alina A. Virani (the "Viranis") filed a response (Doc. No. 28) addressing both motions on August 10, 2009.

      The Viranis' Complaint (Doc. No. 1), filed on March 23, 2009, contains ten counts.  The Viranis assert each count against all four Defendants,[1] with the exception of Count IV, which

---

[1] The fourth named defendant is Homefield Financial, Inc. ("Homefield"), which has not yet answered the complaint or otherwise filed any motions.

the Viranis only bring against SPS.  The Viranis allege violations of the following statutes: the Truth in Lending Act ("TILA"), 15 U.S.C. § 601 *et seq.*, (Count I); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, (Count II); the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203, *et seq.*, (Count III); Section 5(a) of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a), (Count IV); and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a)(3) and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g (Count V).  The Viranis also bring the following common law claims: Fraud in the Factum (Count VI); Fraudulent Misrepresentation (Count VII); Breach of Fiduciary Duty (Count VIII); Unjust Enrichment (Count IX); and Civil Conspiracy (Count X).

The Viranis allege that the Defendants engaged in a securitization scheme wherein they "devised business plans to reap millions of dollars in profits at the expense of Plaintiffs and other investors in certain trust funds."  (*Id.* at 4.)  The Viranis seek compensatory damages and a declaratory judgment regarding which party, if any, is the owner of the promissory note executed at the time of closing and whether their mortgage secures any obligation of the Viranis.  (*Id.* at 4-5).

## II. ALLEGATIONS IN THE COMPLAINT[2]

The Viranis allege that Homefield "induced" them into a transaction, the "alleged closing," that did not comply with underwriting standards for a residential mortgage.  (*Id.* at 5.) The Viranis claim that though Homefield led them to believe otherwise, it and the "nominee"

---

[2] The facts in the complaint are taken as true for purposes of this motion.

on the mortgage, which was MERS, "had no financial stake (i.e., liability) in the transaction and no interest other than obtaining Plaintiffs' signatures on a 'loan' that could never be repaid, contrary to representations and assurances from the conspiring participants in this fraudulent scheme." (*Id.*)  The Viranis allege that the participants' purpose was solely to collect fees and "kickbacks." (*Id.* at 6.)

The Viranis state that though the closing documents represented Homefield as the source of funding, an undisclosed third party actually acted as the lender, despite lacking the legal authority to do so.  (*Id.* at 7.)  "Plaintiffs allege the closing was an 'alleged loan closing' because in fact it was part of an undisclosed hidden illegal scheme to issue unregulated securities (mortgage-backed securities) based upon the negotiation of non-negotiable notes, the terms of which had been changed, altered, amended or modified AFTER the execution by the Plaintiffs." (*Id.* at 8.)

The Viranis allege that the Defendants have failed to reveal the "true source of funds for the alleged loan transaction," which further prevents their right to rescission under the Truth in Lending Act.  (*Id.* at 8.)  The Viranis also claim that the Defendants never advised them that "the mortgage loan being processed was not in their best interest," that the loan was providing cover for "Defendants' illegal activities," that they would likely be in a position of default or foreclosure, that Homefield had no intention of retaining ownership interest in the mortgage loan, that the loan was intended to be sold and assigned to multiple parties, that the mortgage instrument and note could be sold separately to third parties, that assignees or purchasers of the note may make "pay-downs" against the note which might affect the true amount owed by the

Viranis, and that an assignee may not unilaterally impose property insurance requirements different from the requirements of the original loan without the Viranis' consent. (*Id.* at 9-10.)

The Viranis claim that Defendant Homefield intentionally failed to provide them with mandatory disclosures at the closing, including a HUD-1 Settlement Statement reflecting the true cost of the consumer credit transaction; preliminary disclosures required by RESPA, which they refer to as the "GFE"; the Itemization of Amount Financed that would have provided the Yield Spread Premium ("YSP") as required by the TILA; a TILA disclosure reflecting the correct "amount financed"; and proper notices of their right to cancel. (*Id.* at 11-12.)  The Viranis claim that these violations provide a legal basis for their right to rescind. (*Id.* at 12.) The Viranis also claim that the YSP was not disclosed in the broker contract, which stated that the compensation received would be between $0 to $7200. (*Id.*) According to the Viranis, the contract stated that if only a range was disclosed, the exact amount would be disclosed at closing, which did not occur, making this an illegal kickback. (*Id.*) The Viranis claim that the Defendants violated numerous fiduciary obligations by not ensuring that the "purported loan consummation" was legal and proper. (*Id.* at 12-13.) They claim that they, not being in the business of lending, "reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and Regulations." (*Id.* at 13.)

The Viranis allege that after the closing, the Defendants allocated the note to a new corporation, "formed for the express purpose of holding the pooled assets under certain terms." (*Id.* at 7.) These pooled assets were then "pledged completely to the owners of the 'asset-backed securities.' " (*Id.*) The Viranis allege that the Defendants intentionally mislead

-4-

Plaintiffs by failing to disclose that the nature of the mortgage loan applications had been materially changed without their consent and that most loans in the pool were adjustable rate mortgages with unqualified borrowers. (*Id.* at 11.) The Viranis state that "Defendants engaged in a pattern and practice of defrauding Plaintiffs in that, during the entire life of the mortgage loan, Defendants failed to property credit payments made; incorrectly calculated interest on the accounts; and have failed to accurately debit fees." (*Id.* at 13.)

### III. MOTION TO DISMISS STANDARD

In a complaint, plaintiffs must present a short and plain statement of the claim showing that they are entitled to relief. Fed. R. Civ. P. 8(a)(2). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the allegations of the complaining party are to be accepted as true. *Grossman v. Nationsbank, NA.*, 225 F.3d 1228, 1231 (11th Cir. 2000); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). While the allegations must be plausible and sufficient to raise a right to relief above the speculative level, a short and plain statement of the claim is all that is required to survive a motion to dismiss. *Twombly*, 550 U.S. at 555-57. Further, pro se pleadings are held to a less strict standard than those drafted by lawyers and are construed liberally. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). However, the Court does not have "license to serve as de facto counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir.1998).

### IV. ANALYSIS

**A.      MERS's Motion to Dismiss for Failure to State a Claim**

MERS argues that all counts against it should be dismissed because the Viranis only make a single factual allegation against MERS that "cannot form the factual basis to state any actionable claims of wrongdoing against MERS." (Doc. No. 13 p. 1.) According to MERS, this single allegation was that MERS was named the mortgagee, "acting solely as a nominee for Lender and Lender's successors and assigns." (*Id.*)

Regarding the TILA claim (Count I), MERS argues that the complaint "fails to state MERS is a 'creditor,' which is factually necessary for a claim to stand." (*Id.* at 2.) MERS contends that the RESPA claim (Count II) fails because the complaint "fails to allege MERS is a 'servicer,' which is necessary to impose liability under RESPA"; 12 U.S.C. § 2604(c) does not provide a private right of action; MERS is not a "lender"; and a "qualified written request" ("QWR") was not sent to MERS. (*Id.* at 10-13.) The complaint also fails to state a claim under the FDUTPA (Count III), according to MERS, because the complaint does not allege "the purchase or sale of consumer goods or services" or "any deceptive conduct." (*Id.* at 2, 13-15.) Regarding the FDCPA and FCRA claim (Count V), MERS contends it fails because MERS is not a "debt collector" as defined in the FDCPA and because claims under 15 U.S.C. § 1681s-2(a)(3) "are to be enforced exclusively by federal agencies and other federal and state officials." (*Id.* at 2, 15-18.)

MERS asserts that the Viranis' common law claims also fail. According to MERS, the complaint does not allege fraud with the required specificity (Counts VI and VII). (*Id.* at 3.) MERS contends that the complaint "alleges no facts establishing that MERS had a fiduciary duty to the Plaintiffs." (Count VIII). (*Id.*) MERS further argues that because the complaint's single allegation against MERS is that it served as the mortgagee, and because there is no

fiduciary duty between a mortgagor and a mortgagee as a matter of law, this claim fails. (*Id.*) MERS argues that the unjust enrichment claim (Count IX) fails because the complaint does not allege any of the three necessary elements, including that benefits were conveyed to MERS by the Viranis or that "a retention of a benefit by MERS would be inequitable." (*Id.* at 22-23.) Finally, MERS asserts that the complaint "simply makes a legal conclusion of a conspiracy" (Count X), neither adequately alleging the underlying tort of fraud nor "an agreement, understanding, or conspiracy involving MERS to commit fraud." (*Id.* at 3, 23-24.)

**B.      SPS's and USBNA's Motion to Dismiss for Failure to State a Claim**

SPS and USBNA argue that the Viranis fail to state any claim against them. They argue that the TILA claim (Count I) fails because the Viranis' "extended right to rescind, if any, has expired, and the material disclosures attached as exhibits to the Complaint contradict the allegation that they were not delivered at closing." (Doc. No. 22 p. 2.) SPS and USBNA assert that the RESPA claim (Count II) fails because "[n]o implied private civil remedy exists for violations of . . . 12 U.S.C. § 2604(c)" and also because the letter the Viranis claim was a QWR does not qualify as such under 12 U.S.C. § 2605. (*Id.*) They contend that the FDUTPA claim (Count III) fails because the claim is based on alleged violations of RESPA and TILA that are insufficient as a matter of law; therefore, the allegations do not afford the Viranis a basis for relief under FDUTPA. (*Id.*) The FTCA claim (Count IV) fails, according to SPS, because "[n]o implied private civil remedy exists for violations" of the FTCA. (*Id.*) SPS and USBNA assert that the FRCA claim (Count V) "fails to allege that [the Viranis] submitted a dispute to a credit reporting agency and that SPS or [USBNA] was notified by the credit reporting agency of a dispute." (*Id.*) The fraud claims (Counts VI and VII) fail, according to SPS and USBNA,

because the Viranis fail to plead these claims with specificity as required by Fed. R. Civ. P. 9(b).  (*Id.*)  They also argue that the breach of fiduciary duty claim (Count VIII) fails because the Viranis fail "to allege sufficient facts giving rise to a fiduciary relationship beyond the arm's length transaction that would generally exist between creditor and debtor." (*Id.*)  Finally, SPS and USBNA argue that the unjust enrichment claim (Count IX) fails because the Viranis do not plead "that they conferred a benefit on the defendants," and the civil conspiracy claim (Count X) fails because they do not plead the elements with the required specificity.  (*Id.*)

**C.     The Viranis' Response to MERS's, SPS's, and USBNA's Motions to Dismiss**

The Viranis argue that none of the arguments in the Defendants' motions to dismiss meet the "legal standard required to succeed on a motion to dismiss." (Doc. No. 28 p. 1.)  They argue that the complaint satisfied Fed. R. Civ. P. 8 and "there is no basis for requiring a more definite statement." (*Id.*)

The Viranis argue the TILA claim survives because the Act requires not only that certain disclosures are provided; it also requires that the information provided by those disclosures is accurate, such as the APR, finance charge, and payment schedule.  (*Id.* at 4.) Because the disclosures Defendants provided were defective and some not provided, the Viranis maintain that they "had a continuing right of rescission for three years or until May 17, 2008," which they exercised by mailing their rescission letters to Homefield, SPS, and USBNA on March 24, 2008.  (*Id.* at 6-7.)

The RESPA claim against Homefield is sufficient, the Viranis argue, because the exact amount of the broker contract was never disclosed, resulting in an illegal kickback in violation of 12 U.S.C. § 2607.  (*Id.* at 8-9.)  They assert that the claim is also sufficient against SPS

because they sent three valid qualified written requests to SPS, providing sufficient detail regarding the information they were seeking, none of which SPS answered or even acknowledged.  (*Id.* at 9-10.)  The Viranis also argue that SPS "continues to place negative coding on Plaintiffs' credit reports," and doing so before responding to the QWR letter violates the RESPA and the FCRA.  (*Id.* at 10.)  Further, failing to respond to the QWR letter hinders the Viranis in their ability to draft their complaint.  (*Id.*)

Regarding the fraudulent misrepresentation claim against SPS, the Viranis recount a series of phone conversations and correspondence between them and SPS.  (*Id.* at 12-13.)  The Viranis describe how SPS told them they could get a modification of their loan to avoid the "balloon payment" but then told them later that "SPS does not do modifications."  (*Id.*)

The Viranis argue that though MERS asserts that the Viranis made only one factual allegation against MERS, namely, that MERS was named as the "mortgagee" on the Viranis' mortgage, this is not what the Viranis were alleging.  Rather, their position is that MERS was not the mortgagee and that the label "nominee" is "nonsensical language that means nothing in a real estate transaction."  (*Id.* at 15.)  The "mortgage contained a false representation on its face when it represented Defendant MERS was a mortgagee under the mortgage."  (*Id.* at 14.)

**D.      The Claims**

Though pro se pleadings are to be construed liberally, the Court also may not presume essential elements of the Viranis' claims that are not alleged in the complaint.  Therefore, for reasons set forth below, Counts I, II, III, V, VI, VII, VIII, and X against MERS will be dismissed.  Counts IV, V, VI, VII, VIII, and X against SPS will be dismissed.  Counts II, V, VI,

VII, VIII, and X against USBNA will be dismissed.  The Court grants the Viranis leave to submit an amended complaint on or before January 15, 2010.

1.      **TILA claim, Count I**

The bulk of the allegations in this count regard Homefield.  Thus, MERS argues that the Viranis's complaint does not contain the factual allegations necessary to bring a TILA claim against MERS.  MERS contends that the Viranis do not allege that MERS is a creditor, which is necessary to bring a TILA claim.  However, "[c]onsumers are not limited in seeking rescission from creditors." *Parker v. Potter*, 232 Fed. App'x. 861, 865 (11th Cir. Feb. 14, 2007)[3] (stating that if the plaintiff is eligible for rescission under § 1635, the plaintiff "may do so against the creditor, or as against any assignee of the mortgage obligation, regardless of whether the assignee had notice of disclosure violations.").  Nevertheless, the Viranis do not allege that MERS is a creditor or an assignee of the creditor.  Therefore, the TILA claim will be dismissed as to MERS.

However, the claim will not be dismissed as against SPS and USBNA.  SPS and USBNA argue that the TILA claim is time-barred.  Under the TILA, borrowers normally have three days to rescind the transaction, but the three-day rescission period "expands to three years under § 1635 if the requisite information, rescission forms, and disclosures are not provided." *McMillian v. AMC Mortgage Svcs., Inc.*, 560 F. Supp. 2d 1210, 1217 (S.D. Ala. 2008); *In re Smith*, 737 F.2d 1549, 1554 (11th Cir. 1984).  SPS and USBNA argue that the Viranis did not file the instant action before the three-year limitations period expired.  However, the filing of

---

[3] In the Eleventh Circuit, unpublished opinions are persuasive but not binding authority.

the lawsuit was not the trigger for rescission; the trigger was the notice of rescission letters sent

to SPS and USBNA.  "Congress provided the consumer with the right to rescind a credit

transaction under § 1635(a) solely by notifying the creditor within set time limits of his intent

to rescind." *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1139 (11th Cir. 1992).  The

Viranis allege that they sent SPS and USBNA letters of rescission on March 24, 2008, which

was prior to the expiration of the three-year period on May 17, 2008.  Thus, assuming those

facts to be true, the claim is not time-barred.

A second argument SPS and USBNA present is that the Viranis do not sufficiently

allege that the disclosures were not provided to them.  SPS and USBNA contend that the

Viranis admit the disclosures were provided by attaching the disclosures to the complaint.

However, the TILA not only requires that the enclosures be provided; it requires that they be

accurate.  The TILA "requires creditors to provide borrowers with clear and accurate

disclosures of terms dealing with things like finance charges, annual percentage rates of interest,

and the borrower's rights." *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412 (1998).  The Viranis

allege that the Defendants failed to deliver a HUD statement within twenty-four hours after

closing and failed to disclose other closing expenses, including the YSP and PMI, at the time

the loan closed.  (Doc. No. 1 p. 15.)  Contrary to SPS's and USBNA's arguments, these are

sufficient allegations that the Defendants did not provide them with accurate disclosures at

closing as required by the TILA.

Further, the Viranis may have a valid damages claim under 15 U.S.C. § 1640, which

provides that creditors who fail to comply with certain requirements, including any requirement

under section 1635, are liable to obligors for actual damages.  15 U.S.C. § 1640(a).  An action

for damages must be brought within "one year from the date of the occurrence of the violation." *In re Smith*, 737 F.2d at 1552 (citing 15 U.S.C. § 1640(e)). The alleged violation is that SPS and USBNA "took no action necessary" to terminate the security interest and "failed to return to the Plaintiff any money or property given by the Plaintiffs to anyone" as required by 15 U.S.C. § 1635(b) upon the obligor's notice of rescission.[4] (Doc. No. 1 p. 16.)   The Viranis allege they mailed a rescission letter on March 24, 2008, but never received a response from the Defendants.  The action was filed on March 23, 2009, which was within one year of the Defendants' alleged violation.  Therefore, based on the allegations of the complaint, the statute of limitations had not yet expired for the Viranis' action for damages.  *See Sueiro v. Countrywide Home Loans, Inc.*, No. 09-21436-CIV, 2009 WL 2915781, *2 n.2 (S.D. Fla. Sept. 11, 2009).

Because the Viranis allege they notified SPS and USBNA of their intent to rescind within the time limits, and because the Viranis have sufficiently alleged that SPS and USBNA did not provide them accurate disclosures as required, the TILA claim will survive SPS's and USBNA's motion to dismiss.

## 2.      RESPA claim, Count II

Congress enacted the RESPA "to provide consumers with more information on the nature and costs of real estate transactions, and to prevent consumers from falling prey to abuses and unnecessarily high costs . . . ."  *McCarley v. KPMG Intern.*, 293 Fed. App'x. 719, 722 (11th

---

[4] 15 U.S.C. § 1635(b) states: "Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."

Cir. 2008) (citing 26 § U.S.C. 2601).[5]  The RESPA "requires the loan servicer to respond to inquiries and complaints and make corrections within sixty days" of receiving a qualified written request ("QWR").  *Id.* (citing 12 U.S.C. § 2605(e)).  The "servicer" is the entity "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." *Id.* (citing 12 U.S.C. § 2605(i)(3)).  A QWR is "a written correspondence" that identifies the name and account of the borrower and includes "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

        In the instant case, the preliminary issue is whether the Viranis' QWR is a valid request for purposes of the RESPA.  The Viranis' letter attached to the complaint (Doc. No. 1-6) is a valid QWR because it identifies the name and account of the borrower and "provides sufficient detail to the servicer regarding other information sought by the borrower."  *See* 12 U.S.C. § 2605(e)(1)(B).  The letter makes very specific demands regarding the detail sought by the Viranis and also states, after demanding evidence of security or chain of security, that "absent evidence of security I have no choice but to dispute the validity of your lawful ownership, funding, entitlement right, and the current debt you say I owe."  (Doc. No. 1-6 p. 1.)

---

[5] The Viranis allegations based on 12 U.S.C. § 2604(c) are meritless because "there is no private civil action for a violation of 12 U.S.C. § 2604(c), or any regulations relating to it."  *Collins v. FMHA-USDA*, 105 F.3d 1366, 1368 (11th Cir. 1997).

Having decided that the letter satisfied the requirements for a QWR under the RESPA, the Court will address whether each Defendant qualifies as a servicer of the loan. The Court will also address whether the Viranis sufficiently allege that they sent the QWR to each Defendant.

MERS contests that it was a servicer; the Viranis never allege that it was a servicer. Therefore, the RESPA claim will be dismissed as to MERS. Even if MERS was a servicer of the loan, the Viranis do not sufficiently allege that they sent the QWR to MERS. An allegation that they sent MERS the QWR could only be implied by the Viranis' statement that the Defendants "failed to timely and adequately acknowledge, investigate and respond to Plaintiffs' qualified written requests for information about the servicing of their loan." (Doc. No. 1 p. 19.) However, the Viranis never specifically state that they sent the QWR to MERS.

Regarding SPS, the Viranis sufficiently allege that SPS was the servicer of the mortgage in the section of the complaint describing the defendants by stating that SPS is a "financial servicing company in the business of servicing loans" and "[i]n connection with the servicing and collection of mortgage loans, SPS furnishes information to consumer reporting agencies." (Doc. No. 1 p. 3.) SPS does not contest that it was the servicer of the loan. Further, though the Viranis do not specifically allege within the body of the complaint that the letter was sent to SPS, because the QWR attached to the complaint is addressed to SPS and because SPS does not contest that it was sent, the RESPA claim will survive SPS's motion to dismiss.

USBNA does not contest that it was a servicer, but the Viranis never allege that it was a servicer. However, even if USBNA was considered a servicer of the loan, the Viranis do not sufficiently allege that they sent the QWR to USBNA, because they only state that Defendants

"failed to timely and adequately acknowledge, investigate and respond to Plaintiffs' qualified written requests for information about the servicing of their loan."   (Doc. No. 1 p. 19.) Therefore, the RESPA claim will be dismissed as to USBNA.

**3.      FDUTPA claim, Count III**

This claim survives the Defendants' motions to dismiss because the Viranis have sufficiently alleged the elements necessary to state a claim under the FDUTPA.  Though not specifically identified in the statute, plaintiffs must allege three elements "to establish a claim pursuant to the FDUTPA: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. 5th DCA 2008) (citing *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007)).  "A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." *Bookworld*, 532 F. Supp. 2d at 1364 (internal citations omitted).

Though this count contains several legal conclusions, the FDUTPA claim survives dismissal because the Viranis incorporate other sufficient allegations of the complaint in this context.  Specifically, the Viranis allege a deceptive act or unfair practice by claiming the Defendants failed to comply with the disclosure requirements of the RESPA.  The causation element is satisfied by their allegations that Defendants engaged in this scheme to defraud the Viranis by not disclosing the actual cost of the transaction and withholding other information. Because of these misrepresentations, the Viranis allege, they suffered damages by having to pay

more than they should have, being induced into a loan the Defendants knew they could not pay, and losing their house.  (*See* Doc. No. 1 p. 6.)

Because it is unclear what role MERS plays in this transaction, and because the Viranis did not allege that they were involved in a consumer transaction with MERS, this count will be dismissed as to MERS.

However, the claim survives against SPS and USBNA, because some of the Viranis' federal claims survive the motion to dismiss.  Violations of federal consumer protection statutes can constitute FDUTPA violations.  *See* Fla. Stat. § 501.203(3)(c) (stating that violations under the Act include violations of "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices").  Therefore, SPS's and USBNA's argument that the FDUTPA does not apply because the Viranis' underlying claims fail is inapplicable.

**4.     FTCA claim, Count IV**

No implied private civil remedies exist under the FTCA.  *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 361 n.6 (5th Cir.1977)[6] (citing *Holloway v. Bristol-Myers Corp.*, 158 F.2d 986 (D.C. Cir. 1973)) (stating that regulation is in the hands of the administrative agency rather than the private citizen).  Therefore, this count against SPS will be dismissed with prejudice.  The Viranis may not attempt to re-allege this claim in any subsequent amended complaint.

**5.     FCRA and FDCPA claims, Count V**

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

The complaint fails to state a claim under the FCRA because it does not allege that the Viranis submitted the dispute to a consumer reporting agency which in turn notified MERS, SPS, or USBNA.  Section 1681s-2(a) of the FCRA allows for administrative actions but not private suits.  *Equifax Inc. v. F.T.C.*, 678 F.2d 1047, 1049 (11th Cir. 1982); *Peart v. Shippie*, No. 08-17270, 2009 WL 2435211, *1 (11th Cir. Aug. 11, 2009) (stating that section 1681s-2(a) "explicitly bars private suits for violations of this provision").  A private civil action may be maintained under the FCRA "only if the furnisher received notice of the consumer's dispute from a consumer reporting agency."  *Peart*, 2009 WL 2435211 at *1 (citing 15 U.S.C. § 1681s-2(b)(1)).

The complaint also fails to state a claim under the FDCPA.  "It is well established that the FDCPA applies only to 'debt collectors' and not to creditors or mortgage servicers."  *Hennington v. Greenpoint Mortgage Funding, Inc.*, Civil Action Nos. 1:09-CV-00676-RWS, 1:09-CV-00962-RWS, 2009 WL 1372961, *6 (N.D. Ga. May 15, 2009) (citing 15 U.S.C. § 1692a(6)).  "The term 'debt collector' means any person 'who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.' "  *Buckman v. Am. Bankers Ins. Co. of Fla.*, 924 F. Supp. 1156, 1158 (S.D. Fla. 1996) (citing 15 U.S.C. § 1692a(6)).   Further, "foreclosing on a home is not debt collection for purposes of § 1692g."  *Hennington*, 2009 WL 1372961 at *3.  The Viranis do not allege that MERS, SPS, or USBNA are "debt collectors" for purposes of the statute.  Because the defendants are not debt collectors, this count will also be dismissed with prejudice and may not be re-alleged in any subsequent amended complaint.

**6.      Fraud in the Factum, Count VI**

The Viranis have not sufficiently stated a claim for fraud.  "The essential elements of a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the interpretation."  *Ward v. Atl. Sec. Bank*, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001) (citing *Lance v. Wade*, 457 So. 2d 1008, 1011 (Fla. 1984)).  Rule 9(b) of the Federal Rules of Civil Procedure requires fraud to be pled with specificity.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997) (citing *Fitch v. Radnor Indus., Ltd.*, CIV. A. No. 90-2084, 1990 WL 150110, *1 (E.D. Pa. Sept. 27, 1990) ( "Fraud must therefore be pled with specifics concerning time, place, speaker, and at times even the content of the alleged misrepresentation.")).

The Viranis allege that the Defendants made false statements regarding the annual percentage rate to be charged for the loan, the finance charges, the amount financed, the total payments, and the payment schedule.  (Doc. No. 1 p. 22.)  They also allege that the Defendants knew these statements were false, made them at the time of closing, and that it was the Defendants' intention for them to rely on the false statements so that they would accept the terms of the loan.  (*Id.* at 22-23.)  The consequent injury was obtaining the home loan without realizing the risks and fees.   (*Id.*)  However, the Viranis lump all of the Defendants together and do not specify the statements made or the fraud committed by each one at each level.  *See* 1990 *Fitch*, 1990 WL 150110 at *6 (dismissing the claim where the plaintiff did not identify which defendants were responsible for each of the alleged misrepresentations).  In the amended complaint, the Viranis must allege "(1) the precise statements, documents, or misrepresentations

-18-

made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks*,116 F.3d at 1380-81.

**7.     Fraudulent Misrepresentation, Count VII**

Likewise, the Viranis have not stated a claim for fraudulent misrepresentation.  To state a claim for fraudulent misrepresentation, plaintiffs must allege: "(1) a misrepresentation of a material fact; (2) which the person making the misrepresentation knew to be false; (3) that the misrepresentation was made with the purpose of inducing another person to rely upon it; (4) that the person relied on the misrepresentation to his detriment; and (5) that this reliance caused damages." *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650-51 (Fla. 3d DCA 2006). "Failure to allege a specific element of fraud in a complaint is fatal when challenged by a motion to dismiss." *Strack v. Fred Rawn Const., Inc.* 908 So. 2d 563, 565 (Fla. 4th DCA  2005).

Similar to the analysis of the fraud claim above, the Viranis allege that the Defendants misrepresented "the true nature of the mortgage loans actually being processed" and had actual knowledge that the mortgage as processed was in conflict with what had been represented to and requested by the Viranis.  (Doc. No. 1 p. 9.)  They allege that the misrepresentations were made in order to induce the Viranis to rely on them: "Defendants' intent in making these false and material misleading statements was to induce Plaintiffs to act on them and accept the terms of the loan transaction."  (*Id.* at 23.)   The Viranis also allege that they relied on the misrepresentations which caused them detriment in the form of executing predatory loan documents.  (*Id.* at 9.)  Their alleged damages result from making "payments based on the improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts."  (*Id.* at 13.)

-19-

However, none of these allegations identify the precise misrepresentations made or which Defendant made each misrepresentation. *See Brooks*,116 F.3d at 1380-81. Therefore, the claim will be dismissed for failure to plead fraud with the requisite specificity.

**8.     Breach of Fiduciary Duty, Count VIII**

The Viranis also have not stated a claim for breach of fiduciary duty. "The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). The Viranis state only the legal conclusion that by "contracting to provide mortgage loan services and a loan program to Plaintiffs," the Defendants "were 'fiduciaries' in which Plaintiffs reposed trust and confidence . . . ." (Doc. No. 1 p. 25.) The Viranis do not allege sufficient facts to demonstrate that the Defendants had a fiduciary relationship with them.

**9.     Unjust Enrichment, Count IX**

The Viranis sufficiently state a claim for unjust enrichment against MERS, SPS, and USBNA. The elements necessary to state a claim for unjust enrichment are: "1) the plaintiff has conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant has accepted or retained the benefit conferred; and 4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Golden v. Woodward*, 15 So. 3d 664, 670 (Fla. 1st DCA 2009).

The Viranis have sufficiently alleged the four necessary elements. The Viranis allege that they conferred a benefit on the Defendants by paying them higher interest rates, fees, rebates, kickbacks, profits, gains, and a YSP fee. (Doc. No. 1 p. 26.) They allege not only that

defendants knew about these benefits but that they withheld knowledge of the benefits from the Viranis. (*Id.* at 5.) The Viranis also allege that the Defendants retained these benefits, asserting that SPS and USBNA "failed to return to the Plaintiff any money or property given by the Plaintiffs to anyone, including the Defendant(s) . . . ." (*Id.* at 16.) Finally, they allege that it would be unfair for the Defendants to keep these fees and "kickbacks" that were not disclosed to the Viranis as part of the loan cost because these fees and kickbacks were "unrelated to the settlement services provided at closing." (*Id.* at 26.)

**10.    Civil Conspiracy, Count X**

This claim does not survive the motion to dismiss. To state a claim for civil conspiracy, a plaintiff must show: "(a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). The Viranis allege that the "Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs." (Doc. No. 1 p. 26.) However, this allegation does not state sufficient facts but rather sounds more as a legal conclusion. In the amended complaint, the Viranis should, in addition to pleading fraud with specificity, plead facts showing not only that the Defendants conspired to commit fraud, but also the overt act or acts the Defendants performed in furtherance of the conspiracy and how the Viranis were damaged by the conspiracy. *See Walters*, 931 So. 2d at 140.

**V. CONCLUSION**

Based on the foregoing, it is ORDERED as follows:

1. Defendant Mortgage Electronic Registration System, Inc.'s ("MERS") Motion to Dismiss (Doc. No. 13), filed on July 13, 2009, is GRANTED in part and DENIED in part. The motion is granted insofar as it seeks dismissal of Counts I, II, III, V, VI, VII, VIII, and X. Those counts are dismissed against MERS. In all other respects, the motion is denied.

2. Defendants Select Portfolio Servicing, Inc.'s ("SPS") and U.S. Bank National Association's ("USBNA") Motion to Dismiss (Doc. No. 22), filed on July 28, 2009, is GRANTED in part and DENIED in part. The motion is granted insofar as it seeks dismissal of Counts IV, V, VI, VII, VIII, and X against SPS. Those counts are dismissed. The motion is also granted insofar as it seeks dismissal of Counts II, V, VI, VII, VIII, and X against USBNA. Those counts are dismissed. In all other respects, the motion is denied.

3. Plaintiffs Azizally S. Virani and Alina A. Virani (the "Viranis") shall submit an amended complaint on or before **January 15, 2010**. Defendants shall respond by **January 29, 2010**. The amended complaint shall neither serve as an opportunity to add new claims nor to re-allege Counts IV and V. Rather, this represents an opportunity for the Viranis to remedy the pleading deficiencies identified herein. Failure to file an amended complaint by this date may result in dismissal of this case without further notice.

4. The parties shall conduct a Case Management Conference and file a Case Management Report on or before **January 22, 2010**.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida, on December 23, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

ANNE C. CONWAY
United States District Judge